Padgett *v.* Arkansas Power & Light Co.

5-960                                      290 S. W. 2d 426

Opinion delivered May 21, 1956.

*Fred Newth* and *Kenneth C. Coffelt,* for appellant.

*Neill Bohlinger, House, Moses & Holmes* and *William M. Clark,* for appellee.

Lee Seamster, Chief Justice. This appeal is from the judgment of the Pulaski Circuit Court, Second Division, sustaining a demurrer to appellants' complaint containing allegations to the following effect:

"The defendant is a private corporation organized and existing under the laws of the State of Arkansas. Its stock is owned by individuals as private personal property. It is a public utility corporation generating, transmitting and selling electric power in Little Rock, and various sections in Arkansas in connection with the operations of its enterprises. It constructs and maintains power lines for the transmission of electricity in the City of Little Rock, Arkansas, and elsewhere within the state.

"Within one year next before the filing of this suit, the defendant, its agents, servants and employees, with the consent and authority of the Public Service Commission of Arkansas, and the City Council of Little Rock, constructed a heavy voltage high power line across, over and upon certain portions of the said parcels of proper-

ties of each of the plaintiffs, as herein above described, to which they hold fee simple title, subject to street easements for construction of utility lines and street uses, thereby taking such portions of plaintiffs' said properties without just compensation to them, and thereby damaging the remaining portions of each of the parcels of the plaintiffs' said properties as herein alleged in this complaint, in that the said erection of said power line, including its posts, wires, cross arms, guy wires, dead men, and its entire construction which is located within the boundaries of the easements of the streets adjoining the said properties of the said plaintiffs has reduced the market value of each of the properties of the plaintiffs, herein described, at least (50%) fifty per cent.

"Each of the parcels of the properties of the plaintiffs, as herein described, borders certain streets within the City of Little Rock. It is within the boundaries of these streets that the said power line and its entire construction is located, but the plaintiffs allege that their fee simple title to their said parcels of properties herein described, extends to the center of said streets wherein the said power line is located, and that, therefore, the erection of said power line by the defendant constitutes an additional servitude on each of the parcels of property of each of the plaintiffs, as herein described.

"The said power line was located by the defendant, its agents, servants and employees, for the purpose of distribution of said electricity for light and power within the City of Little Rock.

"Plaintiffs allege, that said power line is a high voltage line carrying 115,000; that the poles of the line are approximately 80 feet high from the ground, and they have 17 foot cross-arms; that because of its very nature, as herein alleged, it has decreased the value of plaintiff's properties at least 50%; that because of this fact the laying of said power line in the manner as herein set forth, not only has taken the properties of the plaintiffs within the streets where the line is located, but it amounts to taking their entire properties in that

its construction has damaged the entire lands of the plaintiffs herein described and as herein set forth.

"These plaintiffs, and the entire territory wherein said power line was constructed, have been supplied with electric power by defendant for many years. The franchise under which the defendant has the right to construct electric power lines within the street easements in the city of Little Rock, was executed and entered into in 1888. The streets adjacent to plaintiffs' properties were dedicated as public streets subsequent to 1888 and prior to plaintiffs' acquisition of their said properties herein described. The plaintiffs do not believe, and therefore allege, that at that time it was not contemplated by any person or government agency that such a power line as is involved in this suit, would ever be constructed within any residential district of the said City of Little Rock.

"Plaintiffs allege that they have no other remedy save this suit to recover the damages due them which has been done their property by the construction of said power line by the defendant, as herein set forth."

For reversal of the trial court's judgment, the appellants cite the following points:

"(1) The construction of the power line constitutes additional servitude on the lands of the plaintiffs.

"(2) The construction of the line constitutes a taking of all of the lands of the plaintiffs inside and outside of the street easement, because the construction of the line has diminished in value the entire properties of the plaintiffs fifty per cent. Their lands, therefore, have been taken without just compensation in violation of Section ........ of the State Constitution.

"(3) When the street was dedicated it was not contemplated that such a power line as is involved in this case, would be constructed in any residential area in Little Rock, and therefore, the easement agreement is not binding against these plaintiffs."

The question thus presented in this case is whether the construction of a high voltage electrical line by the appellee, wholly within the street easement, amounted to the taking of a portion of the appellants' properties, and damaging the remaining portions of the said properties without just compensation to the appellants. The appellants earnestly insist that the construction of the power lines in the street easements adjacent to their lots is the imposition of an additional servitude on their lands, a taking of a new and distinct easement without just compensation for resulting damages.

The appellants rely upon the authority cited in *Southwestern Bell Telephone Company* v. *Biddle,* 186 Ark. 294, 54 S. W. 2d 57. In this case the court referred to Section 3989, Crawford and Moses' Digest (Section 73-1801, Arkansas Statutes, Anno., 1947), which follows:

"Any person or corporations organized by virtue of the laws of this State, or of any other State of the United States, or by virtue of the laws of the United States, for the purpose of transmitting intelligence by magnetic telegraph or telephone, or other system of transmitting intelligence, the equivalent thereof, which may be hereafter invented or discovered, may construct, operate and maintain such telegraph, telephone or other lines necessary for the speedy transmission of intelligence along and over the public highways and streets of the cities and towns of this State, or across and under the waters and over any lands or public works belonging to this State, and on and over the lands of private individuals, and upon, along, and parallel to any of the railroads or turnpikes of this State, and on and over the bridges, trestles or structures of said railroads; Provided, the ordinary use of such public highways, streets, works, railroads, bridges, trestles or structures and turnpikes be not thereby obstructed, or the navigation of said waters impeded, and that just damages shall be paid to the owners of such lands, railroads and turnpikes, by reason of the occupation of said lands, railroads and turnpikes by said telegraph or telephone corporations."
The holding of the court in this case was:

"We also think that the erection of a telephone line upon the public highway along lands of adjoining owners, in which the public only has an easement for use as a highway, would not prevent the owner of the land from collecting damages for the new servitude to which his land is subjected, such use not having been in contemplation when the easement was taken or granted."

In the case of *Cathey v. Arkansas Power and Light Co.*, 193 Ark. 92, 97 S. W. 2d 624, the court held that where a power line was constructed along a state highway, the adjacent land owner over whose land the power line was constructed in the highway easement was entitled to nominal damages for the additional servitude not contemplated when the easement was originally acquired.

It would bear to note that the two cases cited above have reference to telephone and power lines constructed over highway easements in the country, i. e., rural property. There is a generally recognized distinction between a highway in the country and a street in a municipality, as to the mode and extent of the use and enjoyment, and, consequently, as to the extent of the servitude in the land upon which they are located, the urban servitude being much more comprehensive than the rural. Streets within the limits of municipal corporations are subject to many uses by the public to which highways in the country are not subject. Moreover, as a village grows into a town and the town grows into a city, the rights of the public in its streets are correspondingly broadened. As a rule, country highways are needed only for the purpose of passing and repassing, and, subject to some exceptions, the rights of the public and of the authorities in charge are confined to the use of the surface, with such rights incidental thereto as are essential to such use. Streets, however, may be used for many purposes other than travel, such as construction of sewers and drains, the laying of gas and water pipes, the erection of telegraph, telephone and electrical power lines, and a variety of other improvements, beneath, upon, and above the surface, to which in modern times they have been subjected. See *Colegrove Water Co.* v.

*Hollywood,* 151 Cal. 425, 90 P. 1053, 13 L. R. A. (NS) 904; *Lostutter* v. *Aurora,* 126 Ind. 436, 26 N. E. 184, 12 L. R. A. 259; *Henkel* v. *Detroit,* 49 Mich. 249, 13 N. W. 611, 43 Am. Rep. 464; *Allen* v. *Boston,* 159 Mass. 324, 34 N. E. 519, 38 Am. St. Rep. 423; *Ft. Wayne* v. *Coombs,* 107 Ind. 75, 7 N. E. 743, 57 Am. Rep. 82; *Smith* v. *Central Power Co.,* 103 Ohio St. 681, 137 N. E. 159.

The evolution of public utilities and the widespread and ever-increasing use of public utility service throughout the state have greatly varied the uses of the streets. It is doubtful whether this great variety of uses has really increased the burdens. The increased burdens upon the streets are caused primarily by the largely increased population, and the demands of the people for necessities, conveniences, and luxuries of modern living conditions. It has been found more economical as well as more speedy to transport merchandise and passengers by rail, to convey electrical energy for light, heat, and power and to transmit messages and information by wires, and to convey gas for fuel and lighting and water for municipal purposes by pipe lines, and other utilities by still other and different methods.

It is hardly correct to say that by such new adoptions the streets are subjected to uses not contemplated when streets were laid out many years ago. It would be more correct to say that present uses are the progression and modern development of the same uses and purposes.

The allegation of the appellants, in their complaint, is to the effect that the construction of the power lines in the street easement constitutes an additional servitude on the properties of the appellants. Their entire claim for damages is based on the theory that the construction of the power lines involved in this case is not a use of a street within that allowable under a public easement for utilities. The complaint concedes and states that the appellee "had the right to construct electric power lines within the street easements in the City of Little Rock."

It is only when a street is subjected to a new servitude inconsistent with and subversive of its proper use

as a street, that the abutting land owner can complain. In no event would compensation in such case be allowed for speculative or contingent damages. We find that the street easement carries with it the right to construct on the streets in cities and towns such reasonable facilities as may be needed to carry public utility service to the inhabitants of such municipalities. In the instant case no additional servitude is imposed upon the property of appellants by construction of such reasonable facilities in the abutting street easements.

Finding no error, the case is affirmed.