Vickie LAWSON *v.* Evelyn A. SIPPLE

94-586                                            893 S.W.2d 757

Supreme Court of Arkansas
Opinion delivered February 20, 1995

544

*Brazil, Clawson, Adlong, Murphy & Osment*, for appellant.

*Grady & Adkisson, P.A,* by: *William C. Adkisson*, for appellee.

ROBERT H. DUDLEY, Justice. Plaintiff, Evelyn Sipple, purchased a lot on Camilla Lane in the Stonebridge subdivision in Conway in December of 1992. At that time she lived out of state, but wanted to immediately start construction of a home on the lot, so she asked her daughter, a resident of Conway, to look after construction of the home. Defendant Vickie Lawson's home is located directly across the street from plaintiff's lot. Camilla Lane runs north and south, and plaintiff's lot is on the east side of the street. Defendant installed her mailbox on plaintiff's side of Camilla Lane in 1989 when an employee of the United States Postal Service told defendant that Camilla Lane had been designated a rural route with delivery only on the east side of the street. Defendant's mailbox is directly in front of plaintiff's home, on plaintiff's side of the street, and interfered with the construction of a sidewalk from plaintiff's front door to the street, blocks part of a yard sprinkler system, and interferes with grading the lawn.

During construction of plaintiff's home, her daughter asked defendant to move her mailbox to the northwest corner of plaintiff's lot where another neighbor's mailbox was located and where plaintiff intended to place her mailbox. Defendant refused to move her mailbox, so plaintiff's daughter removed it. Defendant reinstalled it at the original location, and, after yet another move,

defendant again relocated the mailbox to its original position, which is directly in front of plaintiff's front door, and, this time, encased it inside a brick structure.

In September of 1993, following completion of her home, plaintiff filed this suit in chancery court and sought an injunction ordering defendant to move her mailbox structure away from directly in front of plaintiff's home and to the northern boundary of plaintiff's lot. Defendant answered and filed a counterclaim in which she alleged that plaintiff interfered with the delivery of her mail by taking down her mailbox and by parking in front of the box. She asked that plaintiff be ordered to refrain from removing her mailbox and from interfering with delivery of her mail.

At the conclusion of the trial, the chancellor requested that both parties file posttrial briefs. The chancellor subsequently issued a letter opinion. After receiving the letter opinion, defendant filed a request under Rule 52 of the Arkansas Rules of Civil Procedure for the chancellor to make specific findings of fact and conclusions of law. Another hearing was held, and the chancellor entered the final decree finding that plaintiff owned title in fee simple to the middle of Camilla Lane subject to an easement in favor of the City of Conway for use as a public street, that no one has an absolute right to home delivery of mail, and that defendant had no right to place her mailbox on plaintiff's property. The chancellor ordered the mailbox removed, awarded damages to plaintiff in the amount of $125, which was the cost of having the mailbox moved, and awarded attorney's fees of $1200, as well as costs. We affirm and modify in part and reverse in part.

Defendant first argues that the trial court was without subject matter jurisdiction because of the exclusive federal authority over the Postal Service. The doctrine of federal preemption is based upon the supremacy clause in article VI of the United States Constitution. Under the supremacy clause, state laws that "interfere with, or are contrary to the laws of Congress, made in pursuance of the constitution" are invalid. *Gibbons* v. *Ogden*, 22 U.S. 1, 211 (9 Wheat.) (1824). It involves a congressional intent to supplant state authority in a particular field. *Jones* v. *Rath Packing Co.*, 430 U.S. 519 (1977).

Section 8 of article I of the United States Constitution vests Congress with the exclusive authority to establish post offices and post roads. Congress created the United States Postal Service to carry out the duties regarding the delivery of mail. *See* 39 U.S.C. §§ 101(a) & 102 (1988). The Postal Service is required by Congress to maintain an efficient system of mail delivery nationwide. 39 U.S.C. § 403 (1988). Pursuant to its postal powers, Congress may designate the route over which the mail shall be carried and what may be carried in the mail, and it may prescribe all measures necessary to secure the mail's speedy transit and prompt delivery. *In re Rapier*, 143 U.S. 110 (1892).

Although Congress and the United States Postal Service have the exclusive authority to control the delivery of mail, it does not follow that a dispute involving the location of a mailbox must be decided only in federal district court, and defendant has not cited us to any federal law providing that jurisdiction of disputes involving mailboxes must be heard exclusively in the federal courts. While not exactly on point, section 409 of title 39 of the United States Code is an indication of Congressional intent not to supplant the authority of state courts to decide disputes such as the current one. It provides in pertinent part,

> Except as provided in section 3628 of this title, the United States district courts shall have original *but not exclusive jurisdiction* over all actions brought by or against the Postal Service. Any action brought in a State court to which the Postal Service is a party may be removed to the appropriate United States district court under the provisions of chapter 89 of title 28. . . .

39 U.S.C. § 409 (1988) (emphasis supplied). Thus, even in cases in which the Postal Service is a party, federal district courts do not have exclusive jurisdiction. Another strong indication that federal jurisdiction is not exclusive is found in a section of the Domestic Mail Manual. This publication is compiled by the United States Postal Service and is incorporated into the Code of Federal Regulations. 39 C.F.R. § 111.1 (1994). Section 151.524 of the Domestic Mail Manual provides in pertinent part, "On new rural or highway contract routes, all boxes must be located on the right side of the road in the direction of travel by the carrier. Boxes must be placed *to conform to state laws* and highway regulations." (Emphasis added.)

■    In summary, the doctrine of preemption does not, in itself, operate as a bar to state court jurisdiction. State court jurisdiction is barred only when the federal statutory or regulatory scheme expressly provides that the exclusive jurisdiction to decide an issue is in the federal district courts or a federal agency. State courts can, and often do, interpret federal law. Accordingly, we do not dismiss for lack of state court jurisdiction.

■    Defendant's second point of appeal is that plaintiff was not entitled to the order requiring defendant to remove her mailbox without some proof that she suffered an injury different from the public at large because the encroachment is on a public right-of-way. *See Mergenschroer* v. *Ashley*, 244 Ark. 1238, 429 S.W.2d 120 (1968). We do not reach the issue because defendant did not make this argument below, and we will not consider it for the first time on appeal. *See Grandjean* v. *Grandjean*, 315 Ark. 620, 869 S.W.2d 709 (1994).

In her posttrial brief defendant made a different argument. She argued that plaintiff was without standing to object to the location of the mailbox because the City of Conway, not plaintiff, owned the land upon which it was located. Defendant also made a factual argument at trial that plaintiff was not entitled to bring the action because, by the terms of the subdivision plat, plaintiff only owned to the edge of the fifty-foot right-of-way for the street. However, the restrictive covenants state that "[t]he owners of the separate lots in Stonebridge Subdivision shall own the fee simple title to the center line of all streets upon which said lots abut, subject to the public easement [street right-of-way] aforesaid." The chancellor found a fifty-foot right-of-way for Camilla Lane and that Camilla Lane itself was only twenty-seven feet wide. Therefore, the right-of-way extended eleven and one-half feet on either side of the paved street onto the property of the abutting landowners. Thus, the chancellor found that defendant's mailbox was located on property owned by plaintiff in fee simple, but within the public street right-of-way. As such, plaintiff has rights as owner of the servient tenement, including the right to bring an action in order to direct placement of a structure within the easement. *See Carroll Elec. Coop. Corp.* v. *Benson*, 319 Ark. 68, 899 S.W.2d 756 (1994).

Defendant's third assignment is that the chancellor erred in refusing to make a requested finding on "whether the delivery

of mail within a dedicated street right of way is a public road-way purpose." Appellant alleges that the failure of the chancel-lor to act on this request was error under Rule 52(a) of the Arkansas Rules of Civil Procedure, which provides in pertinent part, "If requested by a party, in all contested actions tried upon the facts without a jury, the court shall find the facts specially and state separately its conclusions of law thereon. . . ."

■■ The chancellor specifically addressed this requested finding and ruled: "The Court specifically declines to make a conclusion as to whether as a matter of law the delivery of mail within a dedicated street right of way is a public roadway pur-pose. The Court finds that there is no evidence on that issue." While the chancellor stated that he declined to answer the requested finding he did, in effect, make a finding on the matter — that the evidence was insufficient to make a finding. The defendant was entitled to no more. A party is not entitled to a direct answer on every specific requested finding if the trial court's findings adequately address the issues. *See Southeast Ark. Landfill, Inc.* v. *State*, 313 Ark. 669, 858 S.W.2d 665 (1993). In any event, this is an appeal from a chancery court. We review such cases *de novo, see Williams* v. *Ashley*, 319 Ark. 197, 890 S.W.2d 260 (1995), and, consequently, we would not reverse on this point of appeal even if the chancellor had refused to make a finding. All of the facts necessary to decide the issue are before us, and we can make a *de novo* determination of the matter. Those facts are discussed in defendant's next assignment of error.

Defendant's fourth assignment is that the chancellor erred in failing to find that delivery of mail within a street right-of-way is a public roadway purpose. The argument has merit. The grant of the easement to the City of Conway was for "public streets." We have considered the fact that a road was used as a mail route in determining whether a road had become a public road through adverse use. *See White* v. *County of Faulkner*, 269 Ark. 304, 601 S.W.2d 827 (1980). In addition, the General Assem-bly has recognized the public nature of mail delivery by enact-ing legislation giving a county judge the discretion to designate as a county road any road that is used as a mail route or a free rural mail delivery route if the road is designated as a mail route by the Postal Service. Ark. Code Ann. § 27-66-205 (Repl. 1994).

■ We have discussed the nature of a "public use" that is encompassed by a grant of an easement for a public street and have written:

> There is a generally recognized distinction between a highway in the country and a street in a municipality, as to the mode an extent of the use and enjoyment, and, consequently, as to the extent of the servitude in the land upon which they are located, the urban servitude being much more comprehensive than the rural. Streets within the limits of municipal corporations are subject to many uses by the public to which highways in the country are not subject. Moreover, as a village grows into a town and the town grows into a city, the rights of the public in its streets are correspondingly broadened. As a rule, country highways are needed only for purpose of passing and repassing, and, subject to some exceptions, the rights of the public and of the authorities in charge are confined to the use of the surface, with such rights incidental thereto as are essential to such use. Streets, however, may be used for many purposes other than travel, such as construction of sewers and drains, the laying of gas and water pipes, the erection of telegraph, telephone and electrical power lines, and a variety of other improvements, beneath, upon, and above the surface, to which in modern times they have been subjected.

*Padgett* v. *Arkansas Power & Light Co.*, 226 Ark. 409, 413, 290 S.W.2d 426, 428-29 (1956).

■ The "public use" that is encompassed by the grant of an easement for a public street is sufficient to include the delivery of mail. *Miller* v. *Nichols*, 526 A.2d 794 (Pa. Super. Ct. 1987). Accordingly, defendant's argument that the trial court erred in failing to find that delivery of mail within a street right-of-way is a public use of the right-of-way is well taken. Defendant deduces that, because of the error, we must reverse and dismiss this case, because an abutting landowner can only complain about the use of a street right-of-way when the right-of-way is subjected to a new servitude that is inconsistent with its public purpose. *See Freeze* v. *Jones*, 260 Ark. 193, 539 S.W.2d 425 (1976); *Padgett* v. *Arkansas Power & Light Co.*, 226 Ark. 409, 290 S.W.2d 426 (1956). She argues that the plaintiff cannot com-

plain about the use of the street for delivery of mail within the street right-of-way, and, therefore, we must reverse and dismiss and leave her mailbox at the location of her choice.

Defendant's statement of law is a valid one, but it misses the issue and, as a result, leads to the wrong result. Even though we hold that authorized rural mailboxes, as part of the federal postal system, serve a public purpose and may be maintained within the right-of-way of a street, it does not follow that a mail patron has the unlimited right to place his or her mailbox on the land of another, without notice to either the servient landowner or to the owner of the dominant right-of-way, and without regard to where those parties wish the mailbox to be located. Also, it does not necessarily follow that there are no possible issues of just compensation to either the servient landowner or the right-of-way owner, or that a court can not determine where the mailbox should be placed. Rather, our holding is that the mail patron has a floating easement for the placement of a mailbox in the right-of-way dedicated for "public use."

■ In discussing a floating easement, we have recently written:

> Where such right-of-way is reserved, or expressly granted and *not defined*, the owner of the servient estate, in the first instance, has the right to *delimit* it, and, in the event of his failure to do so, it may be selected by the grantee of the easement; but, in either case, the location must be a reasonable one, taking into consideration the interest and convenience of both the dominant and servient estates.

*Carroll Elec. Coop. Corp.* v. *Benson*, 319 Ark. 68, 73, 889 S.W.2d 756 (1994) (quoting *Fulcher* v. *Dierks Lumber & Coal Co.*, 164 Ark. 261, 271, 261 S.W. 645, 648 (1924)). We have also written that the owner of the dominant estate must use the property so as to not interfere with the servient estate holder's right to the utilization and enjoyment of his estate. *Davis* v. *Arkansas La. Gas Co.*, 248 Ark. 881, 454 S.W.2d 331 (1970).

A good part of the discussion in our decisional conference on this case was devoted to whether we should modify the chancellor's order because of the unusual procedure in this case. The

facts surrounding the issue are as follows. Plaintiff filed this suit and asked only that the defendant be ordered to remove the mail receptacle from its present location and to place it at the northern boundary of plaintiff's property where the mail receptacles of other property owners are placed. In her trial brief plaintiff stated that the defendant had no right to place her mailbox wherever she chose along the street right-of-way, although the plaintiff would allow her to place the mailbox along the north line of the plaintiff's property. Plaintiff's complaint and brief asked only the relief to which we hold she is entitled. On the other side, the defendant has steadfastly insisted that she has the unqualified right to place the mailbox wherever she chooses on plaintiff's servient estate. The issue joined by the pleadings in the trial court was whether defendant would prevail and be able to place the mailbox wherever she chose, or whether the plaintiff would prevail and the chancellor would order the mailbox moved to the north line of plaintiff's property as requested by plaintiff. Surprisingly, the chancellor granted plaintiff more relief than asked and ruled that "the defendant has no right to placement of her mailbox on plaintiff's property and is directed and ordered to remove it forthwith." Even after the chancellor's order, the plaintiff in her brief in this court renewed her offer as follows: "Since before this cause of action was initiated, the appellee [plaintiff] has indicated her willingness for the appellant [defendant] to locate her mailbox on appellee's north line, where her own mailbox is located as well as those of other neighbors. That offer has been renewed in the complaint filed by the appellee, and by separate post-trial letter briefs to the trial court. Appellee maintains that position, enabling appellant to obtain the curbside service over which she now seeks to make a "federal issue." In oral argument before this court, both plaintiff's counsel and defendant's counsel were asked if they thought a modification of the trial court's order would be just under these unusual circumstances. Quite naturally, plaintiff's counsel showed no enthusiasm for such a modification and pointed out that the defendant had never requested such relief, but did not disclaim either her pleadings in the trial court or her statement in her brief in this court.

Under these circumstances, we think it is just to modify the decree to provide that the defendant may place her mailbox in the servient right-of-way, but the location must be a reasonable one, taking into consideration the interest and convenience

of plaintiff's servient estate. Thus, we affirm the holding of the chancellor that the defendant does not have the right to place her mailbox wherever she chooses in the right-of-way, but modify it to provide that she may place it in the right-of-way subject to plaintiff's right to delimit, and we remand for further proceedings consistent with this holding. Finally, we note that defendant did not make the City, the owner of the dominant estate, a party to her counterclaim.

Defendant's final point of appeal is that the chancellor erred in awarding attorney's fees to the plaintiff. The chancellor awarded $1,200.00 in fees pursuant to section 16-22-309 of the Arkansas Code Annotated of 1987. That statute awards fees "[i]n any civil action in which the court having jurisdiction finds that there was a complete absence of a justiciable issue of either law or fact raised by the losing party or his attorney." Ark. Code Ann. § 16-22-309(a)(1) (Repl. 1994). Subsection (b) defines when there is an absence of a justiciable issue:

> In order to find an action, claim, setoff, counterclaim, or defense to be lacking a justiciable issue of law or fact, the court must find that the action, claim, setoff, counterclaim, or defense was commenced, used, or continued in bad faith solely for purposes of harassing or maliciously injuring another or delaying adjudication without just cause or that the party or the party's attorney knew, or should have known, that the action, claim, setoff, counterclaim, or defense was without any reasonable basis in law or equity and could not be supported by a good faith argument for an extension, modification, or reversal of existing law.

From our *de novo* review of the record, we conclude that the chancellor abused his discretion in awarding fees under this standard. This was a case of first impression in this jurisdiction. The issues raised by defendant in defending the action and in pursuing her counterclaim had a basis in fact and a partial basis in law, as she is entitled to place her mailbox in the right-of-way. While counsel was in error in arguing that our cases gave her the unfettered right to place her mailbox wherever she chose, there was nothing to indicate that the argument was made in bad faith or that it was made solely for the purpose of harassing or of maliciously injuring the plaintiff.

Affirmed and modified in part and reversed in part.

GLAZE, J., concurring in part and dissenting in part.

TOM GLAZE, Justice, concurring in part, dissenting in part. The majority opinion correctly holds that authorized rural mailboxes, as part of the federal postal system, serve a public purpose and may be maintained within the right-of-way of a street. I also agree that the location of Ms. Lawson's mailbox in the right-of-way must be a reasonable one. However, because this review is de novo, I would decide and mercifully end this case, and based upon the record before us, would order the Lawson mailbox to be placed at the northeast corner of Ms. Sipple's lot where other mailboxes are located. In my view, the "floating easement" law is inapplicable to the facts here and unnecessarily complicates the analysis of the case.